IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER COLABELLI, JR., *et al.*, | |
| *Plaintiffs*, | Civil Action |
| v. | No. 20-cv-715 |
| EVANSTON INSURANCE COMPANY, | |
| *Defendant*. | |

MEMORANDUM OPINION

**GOLDBERG, J.**                                                                                                    February 25, 2022

In this insurance coverage lawsuit, Plaintiffs Peter Colabelli and Kristina Colabelli seek indemnification under a liability insurance policy issued to Plaintiffs' assignor, Builders Prime Window & Supply Co., Inc. ("Builders Prime"). Defendant Evanston Insurance Company is the successor to Essex Insurance Company, which issued the policy to Builders Prime.

Presently before me is Defendant's Motion for Judgment on the Pleadings, wherein Defendant seeks to have Plaintiffs' Complaint dismissed because Defendant does not owe indemnity under the policy. For the reasons set out below, I will grant the Motion and dismiss Plaintiffs' Complaint.

**I.    FACTS**

Except where noted, the following facts, viewed in the light most favorable to Plaintiffs, are taken from Plaintiffs' Complaint:

- In 2005, Plaintiffs contracted with Sturbridge Associates, LLC and Sturbridge Builders, Inc. (the "Sturbridge Companies") for the construction of a new home. After moving in, Plaintiffs experienced water leaks that damaged the interior of the home. (Complaint ¶¶ 3, 6.)

1

- In response, Plaintiffs sued the Sturbridge Companies in the Montgomery County Court of Common Pleas for breach of contract, breach of implied warranty, negligence, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "Montgomery County lawsuit"). Plaintiffs' complaint in the Montgomery County lawsuit alleged that Plaintiffs' home was built with "defective conditions" that caused "water leaks through the roof and/or window areas" resulting in "damage to the interior of [Plaintiffs'] home, including the staining of walls and damage to carpeting." (Montgomery County Complaint ¶¶ 9-13.) The Sturbridge Companies joined as an additional defendant Builders Prime, whom the Sturbridge Companies alleged to be the roofing contractor for Plaintiffs' home.

- Plaintiffs eventually settled with the Sturbridge Companies. The Sturbridge Companies then assigned to Plaintiffs any rights to indemnification, contribution, or subrogation the Sturbridge Companies had against Builders Prime. Plaintiffs pursued their assigned rights against Builders Prime and obtained a judgment in the amount of $100,700. (Complaint ¶¶ 22, 25.)

- Builders Prime was insured under a Commercial General Liability (CGL) policy with Essex Insurance Company. Essex denied coverage for Plaintiffs' claims and refused to defend Builders Prime in the Montgomery County lawsuit or indemnify Builders Prime for Plaintiffs' $100,700 judgment. Builders Prime then assigned its rights against Essex to Plaintiffs. (Id. ¶¶ 26-27.)

- The CGL policy issued to Builders Prime (the "Policy") provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" subject to certain conditions. (Answer Ex. A[1], Commercial General Liability Coverage Form, ¶ 1.a.) Among the conditions are that the "'bodily injury' or 'property damage' [be] caused by an 'occurrence'." (Id. ¶ 1.b(1).) The term "occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions[.]" (Combination Contractors Endorsement ¶ 1.)

- The Policy also contains a "Supplemental Declarations" page that lists three activities for which Builders Prime is insured. One of those activities is "CONTRACTORS - SUB - CONSTRUCTION/RECONST/REPAIR/ERECTION BLDGS NOC." Builders Prime paid a premium associated with this activity that was in addition to the premium Builders Prime paid in connection with Builders Prime's other business activities. (Compl. Ex. M.)

Plaintiffs contend that Defendant, as successor to Essex Insurance Company, is obligated

to indemnify Builders Prime for Builders Prime's liability in connection with the water leaks in

---

[1] Plaintiffs accept the authenticity of this document for purposes of the present Motion. (Plaintiffs' Brief at 3-4.)

Plaintiffs' home. Plaintiffs seek to collect the indemnity owed Builders Prime as Builders Prime's assignee. Defendant disagrees and seeks a judgment dismissing Plaintiffs' Complaint.

## II.     LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings will be granted only if "the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). In deciding the motion, the court must accept the nonmoving party's factual allegations as true and view them in the light most favorable to the nonmoving party. Id. This is the same standard that applies to a Rule 12(b)(6) motion to dismiss. See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

"[I]n deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quotation marks omitted). In this case, I may consider the Policy attached to Defendant's Answer because Plaintiffs' Complaint is based on this document and Plaintiffs accept that the document is authentic.

## III.    DISCUSSION

Defendant argues it has no duty to indemnify Builders Prime for liability related to the water damage for numerous reasons, but I find it necessary to address only one: Defendant's argument that the water damage was not an "occurrence" as defined by the Policy. For the reasons explained below, I agree with Defendant that Plaintiffs' Complaint does not establish that Builders Prime's liability arose from an occurrence.

The parties agree that Pennsylvania law governs coverage under the Policy. Under Pennsylvania law, an insured bears the initial burden of establishing coverage under an insurance policy. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009). The interpretation of policy language is a question of law for the court to decide. 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005). In doing so, the court aims to "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Id. at 171.

Words in an insurance policy are to be construed in their "natural, plain and ordinary sense." Riccio v. Am. Republic Ins. Co., 705 A.2d 422, 426 (Pa. 1997). Where the policy language is unambiguous, the court is required to give it effect. Id. On the other hand, a policy susceptible to more than one construction will be "strictly construed against the insurer." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). However, "the policy language must not be tortured to create ambiguities where none exist." Id.

Because the Policy at issue here is a liability insurance policy, special rules govern the coverage determination. A liability insurance policy may give rise to two separate duties on the part of the insurer: a duty to defend the insured in a suit and a duty to indemnify the insured for liability paid. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). The duty to defend is broader than the duty to indemnify. Id. at n.7. Therefore, if the insurer does not have a duty to defend with respect to a lawsuit, it follows that the insurer also has no duty to indemnify for any liability incurred in that suit. Id.

To determine whether an insurer has a duty to defend, Pennsylvania applies the "four-corners rule." Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co., 939 F.3d 243, 249 (3d Cir. 2019). Coverage is determined by comparing the allegations in the pleading brought against the insured to the terms of coverage in the policy. Id. The duty to defend will be triggered whenever "the

4

allegations of the underlying complaint *potentially* could support recovery under the policy." Id. (emphasis in original).

The claims in the present indemnity suit are based on Plaintiffs' underlying complaint in the Montgomery County lawsuit and the Sturbridge Companies' joinder complaint against Builders Prime. The allegations in those complaints are not disputed for purposes of the present Motion. While these complaints sought to impose liability for the water damage to Plaintiffs' home under four theories, it is the "factual allegations" rather than the "cause[s] of action" that control. Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

The factual allegations in the Montgomery County lawsuit are that Plaintiffs' home was built with "defective conditions" that included: "missing kick out fleshing under existing siding, backer rod and caulking missing around windows, weep screen missing, water and ice guards missing, and defective fascia board installation"; those defects caused "water leaks through the roof and/or window areas"; and the intruding water "caus[ed] damage to the interior of [Plaintiffs'] home, including the staining of walls and damage to carpeting." (Montgomery County Complaint ¶¶ 9-13.) The Sturbridge Companies, in turn, alleged that Builders Prime was liable for any defects because "Builders Prime [was] the party who actually constructed Plaintiffs' roof." (Joinder Complaint ¶ 14.)

Applying the four-corners rule, these allegations will give rise to a duty to defend if they "potentially come within the coverage of the policy." Sapa Extrusions, 939 F.3d at 250. As described above, the Policy provides coverage only for liability stemming from an "occurrence," which is an "accident." Numerous cases have addressed the meaning of "accident" in the context of a CGL policy. The word "accident" "implies a degree of fortuity that is not present in a claim for faulty workmanship." Kvaerner Metals, 908 A.2d at 898. In addition, "any distinction between

5

damage to the work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship." Sapa Extrusions, 939 F.3d at 256. Because the underlying complaints describe Builders Prime's liability as emanating from Builders' Prime's alleged faulty workmanship, its liability is not the result of an "occurrence," and there is no coverage under the Policy.

Plaintiffs offer two arguments in favor of coverage. First, Plaintiffs point out that one of their claims in the Montgomery County lawsuit was for "negligence," and a reasonable insured would expect a liability insurance policy to cover negligence. Again, it is the factual allegations rather than the causes of action that determine coverage. Mut. Ben. Ins. Co., 725 A.2d at 745. And the factual allegations in the Montgomery County lawsuit, even if labeled negligence, do not describe an accident.

Plaintiffs also note that Builders Prime paid a separate premium for coverage related to construction work. Plaintiffs assert that, if Builders Prime is not covered for water damage resulting from that construction work, the coverage corresponding to that additional premium would be illusory. To avoid this result, Plaintiffs reason, I should interpret the Policy to cover their claims in this case.

I disagree that limiting coverage for Builders Prime's construction work to claims stemming from an "accident" renders this coverage illusory. If Builders Prime had accidentally damaged property while engaged in construction work, coverage would have taken effect (assuming the other conditions of coverage were met). But if Builders Prime delivered a faulty work product, as was alleged, there is no accident and thus no coverage.

I therefore find that the operative Complaint, even when viewed in the light most favorable to Plaintiffs, shows that Defendant had no duty to defend Builders Prime with respect to the

Montgomery County lawsuit. Defendant thus also has no duty to indemnify Builders Prime for the resulting judgment. Kvaerner Metals, 908 A.2d at 896 n.7. Accordingly, I will grant Defendant's Motion.

### IV. **CONCLUSION**

For the reasons set out above, I will grant Defendant's Motion for Judgment on the Pleadings.

An appropriate order follows.